UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ANTHONY TAYLOR, on behalf of himself
and others similarly situated,

                             Plaintiff,

                 -against-

R.J.T. MOTORIST SERVICES, INC. and
RAYMOND TARTAGLIONE,

                        Defendants.
-------------------------------------------------------------------------X

ECF Case

Case No.:  19-cv-01155

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE

**Respectfully submitted,**

William D. Frumkin, Esq.
Elizabeth E. Hunter, Esq.
Jordan M. Kaplan, Esq.
FRUMKIN & HUNTER LLP
*Attorneys for Defendants*
1025 Westchester Avenue, Suite 309
White Plains, New York 10604
(914)468-6096

## TABLE OF CONTENTS

TABLE OF AUTHORITIES  .................................................................iii – vi

PRELIMINARY STATEMENT  ...............................................................1

ARGUMENT ...........................................................................................2

    POINT I.      Plaintiff's Motion Should Be Denied Because the Putative Collective Has Not Been Defined Clearly Enough to Enable The Court to Ascertain If Anyone Is Similarly Situated.......................................2

    POINT II.     Plaintiff's Motion Should Be Denied Because He Has Not Made a Sufficient Showing That There Exist Similarly Situated Employees Subject To A Common Policy and Practice Of Denying Minimum Wages And Overtime.................................................................5

        A.    Plaintiff has not Sufficiently Shown That Other Tow-Truck Drivers Besides Himself Failed to Receive the Minimum Wage.................................6

        B.    Plaintiff has not Sufficiently Shown That Other Tow-Truck Drivers Besides Himself Failed to Receive Pay for Overtime.................................8

        C.    Plaintiff's Putative Collective is Deficient Insofar as it Includes Employees Seeking Unpaid Minimum Wages and Overtime for a Six-Year Period, Which is Beyond the FLSA's Recovery Period, and Insofar as it Includes Employees Seeking "Spread of Hours Pay," Which is not Recoverable Under the FLSA. ..............................................................13

    POINT III.    While Conditional Certification Should Be Denied, If The Court Does Grant The Instant Motion, Plaintiff's Request For Equitable Tolling Should Be Denied Because No Unusual Or Extraordinary Circumstances Exist To Justify This Measure..............................15

    POINT IV.    While Conditional Certification Should Be Denied, If The Court Does Grant the Instant Motion, Plaintiff's Proposals Concerning Notice To The Collective Should be Modified To Better Align With This Court's Jurisprudence..............................................................16

        A.  The Notice Period Should be Three Years..............................16

        B.  The Notice Period Should Look Back From the Date the Notice is Sent and From the Date of the Complaint. ..............................................19

C.  Plaintiff's Request That Defendants Provide Compensation Rates
    Should be Denied Because This Information Does not Facilitate
    the Sending of Notices. ........................................................................20

D.  Plaintiff's Request That Defendants Provide Social Security Numbers
    Should be Denied Because Disclosure of This Information Infringes
    Privacy Rights........................................................................................20

E.  Plaintiff's Request That Defendants Provide Telephone Numbers
    to Facilitate Notice by Text Message Should be Denied Because Disclosure
    of This Information is Not Appropriate Outside of a High-Turnover
    Business...................................................................................................21

F.  The Various Notices, and Consent to Join Form, Proposed by
    Plaintiff Have Defects That Must be Remedied.......................................22

    1.  Notice of Pendency.........................................................................22

    2.  Consent to Join Form......................................................................24

    3.  Reminder Notice..............................................................................25

    4.  Text Message Notice........................................................................25

    5.  Email Notice.....................................................................................25

CONCLUSION...............................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135 (2d Cir. 2011) ........................................................ 15

*Ali v. N.Y.C. Health & Hosps. Corp.*, No. 11-CIV-6393, 2013 U.S. Dist. LEXIS 44091
    (S.D.N.Y. March 27, 2013)............................................................................................... 6

*Anglada v. Linens n' Things, Inc.*, No. 06-CV-12901, 2007 U.S. Dist. LEXIS 39105
    (S.D.N.Y. April 26, 2007)................................................................................................. 19

*Benavides v. Serenity Spa N.Y., Inc.*, 166 F. Supp. 3d 474 (S.D.N.Y. 2016) ............................... 17

*Bittencourt v. Ferrara Bakery & Café, Inc.*, 310 F.R.D. 106 (S.D.N.Y. 2015) ........................... 14

*Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55 (E.D.N.Y. 2008)..................24-25

*Chhab v. Darden Rests., Inc.*, No. 11-CIV-8345, 2013 U.S. Dist. LEXIS 135926
    (S.D.N.Y. Sept. 2013).......................................................................................................19

*Diaz v. S&H Bondi's Dep't Store, Inc.*, No. 10-CIV-7676, 2012 U.S. Dist. LEXIS 5683
    (S.D.N.Y. Jan. 17, 2012)................................................................................................... 24

*Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369 (E.D.N.Y. 2008)................................ 13, 19

*Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551, 2016 U.S. Dist. LEXIS 141916 (S.D.N.Y.
    Oct. 13, 2016) .................................................................................................................. 12

*Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12-CIV-7193, 12-CIV-7194, 2013 U.S. Dist. LEXIS
    124692 (S.D.N.Y. Aug. 27, 2013) ..................................................................................... 6

*Flores v. Chirping Chicken NYC*, No. 14-CV-1594, 2017 U.S. Dist LEXIS 33381
    (S.D.N.Y. March 6, 2017)................................................................................................. 14

*Flores v. Osaka Health Spa, Inc.*, No. 05-CV-962, 2006 U.S. Dist. LEXIS 11378

    (S.D.N.Y. March 16 2006)...................................................................................... 2

*Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 U.S. Dist. LEXIS 75817

    (E.D.N.Y. Oct. 11, 2007) ...................................................................................... 25

*Hallisey v. America Online, Inc.*, No. 99-CIV-3785, 2008 U.S. Dist. LEXIS 18387

    (S.D.N.Y. Feb. 19, 2008)...................................................................................... 25

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) .................................................. 16

*Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2006 U.S. Dist. LEXIS 69021

    (W.D.N.Y. Sept. 22, 2006) .................................................................................... 21

*Hernandez v. The Fresh Diet Inc.*, No. 12-CIV-4339, 2012 U.S. Dist. LEXIS 169332

    (S.D.N.Y. Nov. 21, 2012) ..................................................................................... 24

*Iriarte v. Redwood Deli and Catering, Inc.*, No. CV-07-5062, 2008 U.S. Dist. LEXIS 50072

    (E.D.N.Y. June 30, 2008) ..................................................................................... 24

*Jenkins v. TJX Companies, Inc.*, 853 F. Supp. 2d 317 (E.D.N.Y. 2012) ........................................ 9

*Juarez v. 449 Res., Inc.* 29 F. Supp. 3d 363 (S.D.N.Y. 2014) ........................................................ 13

*Khan v. Airport Mgmt. Servs., LLC*, No. 10-CIV-7735, 2011 U.S. Dist. LEXIS 133134

    (S.D.N.Y. Nov. 16, 2011) ...................................................................................... 9

*Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492, 2017 U.S. Dist. LEXIS 213961

    (S.D.N.Y. May 22, 2017)...................................................................................... 22

*Liiun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV12220, 2019 U.S. Dist. LEXIS 154246

    (S.D.N.Y. Sept. 6, 2019) ...................................................................................... 15

*Lora v. To-Rise, LLC*, No. 16-CV-3604, 2017 U.S. Dist. LEXIS 112644

    (E.D.N.Y. July 18, 2017) ................................................................................ 20

*Lujan v. Cabana Mgmt., Inc.*, No. 10-CIV-755, 2011 U.S. Dist. LEXIS 9542

    (E.D.N.Y. Feb. 1, 2011) ................................................................................ 16

*Morales v. Plantworks, Inc.*, No. 05-CIV-2349, 2006 U.S. Dist. LEXIS 4267 ............................ 13

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) ................................................. 6, 14

*Park v. FDM Group, Inc.*, No. 16-CV-01520, 2019 U.S. Dist. LEXIS 86309

    (S.D.N.Y. May 22, 2019) ................................................................................ 22

*Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 U.S. Dist. LEXIS 42627

    (E.D.N.Y. June 12, 2006) ................................................................................ 2

*Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672, 2016 U.S. Dist. LEXIS 36324

    (S.D.N.Y. March 10, 2016) ................................................................................ 17

*Ramos v. Platt*, No. 13-CV-8957, 2014 U.S. Dist. LEXIS 100549 (S.D.N.Y. July 23, 2014) ..... 16

*Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................. 5

*Reyes v. Nidaja, LLC*, No. 14-CIV-9812, 2015 U.S. Dist. LEXIS 101728 (July 31, 2015) ........... 7

*Romero v. H.B. Auto. Group, Inc.*, No. 11-CIV-386, 2012 U.S. Dist. LEXIS 61151

    (S.D.N.Y. May 1, 2012) ................................................................................ 5

*Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508 (E.D.N.Y. 2011) ..................... 21

*Sanchez v. JMP Ventures, LLC*, No. 13-CV-7264, 2014 U.S. Dist. LEXIS 14980

    (S.D.N.Y. Jan. 27, 2014) ................................................................................ 12

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545 (S.D.N.Y. 2013) ........................... 17

*Turban v. Bar Giocosa Corp.*, 2019 U.S. Dist. LEXIS 140581 (S.D.N.Y. Aug. 14, 2019) ......... 21

*Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 U.S. Dist. LEXIS 99089

(E.D.N.Y. June 29, 2015) ............................................................................................ 21

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445 (S.D.N.Y. 2011) ..................... 24

## Statutes and Rules

29 U.S.C. §§ 201 *et seq*.............................................................................................1, 14

29 U.S.C. § 255(a) .................................................................................................... 14

New York Labor Law §§ 650 *et seq.* ........................................................................... 14

12 N.Y.C.R.R. § 142-2.4(a) ........................................................................................ 14

## PRELIMINARY STATEMENT

Plaintiff has moved this Court, by a motion filed on September 13, 2019, for an Order conditionally certifying a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Plaintiff's motion should be denied because Plaintiff has failed to clearly articulate which grouping of employees he claims to be similarly situated to him. Defendants should not be required to speculate over the scope the putative collective. Furthermore, it is not the role of the Court to formulate the composition of the collective for the Plaintiff. For this reason, the motion should be denied.

Alternatively, should the Court be inclined to consider Plaintiff's request, the Court should limit its consideration of the putative collective to tow-truck drivers employed by Defendants within the preceding three years. While Plaintiff's burden at the conditional certification stage is modest, it is far from non-existent. Plaintiff offers no showing that other tow-truck drivers are similarly situated to him, beyond generalizations and vague conversations. Courts have determined that the type of showing made by Plaintiff is insufficient. Consequently, Plaintiff's motion should be denied insofar as it is deemed to seek conditional certification of a collective of tow-truck drivers.

Lastly, in the event the Court decides to conditionally certify the collective, it should modify the proposed notice provisions so that they are consistent with the prevailing authority within this Circuit.

## ARGUMENT

**I.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THE PUTATIVE COLLECTIVE HAS NOT BEEN DEFINED CLEARLY ENOUGH TO ENABLE THE COURT TO ASCERTAIN IF ANYONE IS SIMILARLY SITUATED.**

Plaintiff has failed to clearly define the putative collective for which he is seeking conditional certification in that Plaintiff has presented inconsistent definitions of the collective in his complaint, his memorandum of law in support of his motion for conditional certification of a collective action, and his proposed notice. Courts have denied motions for conditional certification in cases with similar facts, based upon failing to clearly define the proposed collective by presenting inconsistent definitions of the proposed collective.

For example, in *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 U.S. Dist. LEXIS 42627, at *9, 12 (E.D.N.Y. June 12, 2006), the Court denied a motion for conditional certification, in part, because the "plaintiff [did] not consistently define the universe of similarly situated individuals." As in the instant case, the plaintiff in *Prizmic* presented inconsistent definitions of the proposed collective. While in the complaint, the plaintiff sought certification on behalf of "only his fellow installation installers," the conditional certification motion defined the putative collective as "all current and former employees." *Id.*

Similarly, in *Flores v. Osaka Health Spa, Inc.*, No. 05-CV-962, 2006 U.S. Dist. LEXIS 11378, at *5-7 (S.D.N.Y. March 16 2006), the complaint, the motion, and the proposed notice all identified the putative collective differently. The court noted that:

> On one occasion, the class is alleged to be composed of masseuses who work and did work at the defendants' spa facilities in excess of 40 hours in a work-week and were not compensated for the hours beyond 40 hours that they worked. On another occasion, the class is not limited to masseuses, but is claimed to be composed of

2

"all [] current and former employees of the defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." On yet another occasion, the class is described as "all non-exempt current and former employees" of an entity, "Osaka Health Spa of New York," that is not a defendant in the action. In addition, Flores has confused matters further by describing the proposed plaintiffs as "home health aide employees" in the notice concerning the pendency of this action that she has asked the Court to approve for publication.

*Id.* at *5-7. The court denied the motion for conditional certification, stating, "In a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted." *Id.* at *7.

Here, Plaintiff has submitted various filings with this Court containing inconsistent descriptions of the group of employees for whom he is seeking certification. First, Plaintiff, in his Collective Action and Class Action Complaint [Doc. No. 1] ("Complaint") ¶ 3, identified the putative collective as "employees in defendants' automotive servicing, auto body repairs, towing and road services business[.]..."

Second, in paragraph 16 of the Complaint, Plaintiff appeared to expand the putative collective, as follows, to:

> all non-exempt persons . . . *including* all employees who were employed by defendants for manual positions in defendants' automotive servicing, auto body repairs, towing and road services business, *inter alia*, tow truck drivers, mechanics, auto body repair specialists, and any other similarly situated current or former employees holding comparable positions[.]..."

(emphasis supplied). This definition does not exclude, and appears to include, other non-exempt persons, such as, for example, sales and clerical workers. Accordingly, the definition in paragraph 16 is even broader than the aforementioned definition in paragraph 3 of the Complaint. In addition, in the Notice of Plaintiffs' Motion for Conditional Collective Certification and for Court

3

Facilitation of Notice [Doc. No. 27 at 1] ("Notice of Motion"), Plaintiff seeks conditional certification "on behalf of all non-exempt employees employed by Defendants[.]…"

Third, in the Memorandum of Law in Support of Plaintiffs' Motion for Conditional Collective Certification [Doc. No. 28] ("Memo of Law"), Plaintiff redefines the putative collective once again, in the following two distinct ways: (1) "employees who drove tow-trucks for defendants' automotive servicing, auto body repairs, towing and road services business" (*Id.* at 1); and (2) "Tipped Workers and/or Restaurant Employees." *Id.* at 5. While we recognize that the latter definition is likely a typographical error, it nonetheless contributes to the overall sense of confusion surrounding the nature of the putative collective. However, even just focusing on the definition of "employees who drove tow-trucks for defendants' automotive servicing, auto body repairs, towing and road services business", this presents yet another new collective – only tow-truck drivers – than was previously presented.

Finally, Plaintiff's proposed Notice of Pendency [Doc. No. 30-4] at 2 appears to expand the putative collective from those driving tow-trucks for particular aspects of the business (i.e., "defendants' automotive servicing, auto body repairs, towing and road services business") as referenced above in the Memo of Law, to all "tow-truck driver[s]," a new description of the collective, causing additional confusion.

Consequently, as a result of these multiple, inconsistent definitions of the proposed collective presented by Plaintiff, there is no clearly defined putative collective for the Court to conditionally certify. For this reason, Plaintiff's motion for conditional certification of a collective action should be denied.

II.   **PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE HE HAS NOT MADE A SUFFICIENT SHOWING THAT THERE EXIST SIMILARLY SITUATED EMPLOYEES SUBJECT TO A COMMON POLICY AND PRACTICE OF DENYING MINIMUM WAGES AND OVERTIME.**

Should the Court decline to deny Plaintiff's motion for conditional certification (for failing to clearly define the proposed collective as discussed in Point I above), Defendants submit, in the alternative, that Plaintiff should be deemed to be proposing a collective consisting of "employees who drove tow-trucks for defendants' automotive servicing, auto body repairs, towing and road service business." This is one of the definitions set forth in Plaintiff's Memo of Law in support of his conditional certification motion (Memo of Law at 1) as well as in the document Plaintiff styles as an Affidavit of Anthony Taylor [Doc. No. 29] ("Taylor Decl."),[1] which is the only evidence offered in support of the motion. This definition is also close to (or maybe effectively the same as) the definition in Plaintiff's proposed notice. *See* Notice of Pendency at 2.

Assuming, *arguendo*, that the putative collective is defined in this manner, the motion should still be denied because the Plaintiff's assumptions about this group of employees is not supported by any evidence that this group of employees are similarly situated. "While Plaintiffs burden of proof is low, it is not non-existent – 'certification is not automatic." *Romero v. H.B. Auto. Group, Inc.*, No. 11-CIV-386, 2012 U.S. Dist. LEXIS 61151, at *27 (S.D.N.Y. May 1, 2012) (quoting *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 320 (S.D.N.Y. 2011)). "Conclusory

---

[1] While the Taylor Decl. is styled as an "Affidavit", we observe that it has not been notarized. Moreover, while Plaintiff purports to "being duly sworn", the document does not indicate by whom he has been sworn, nor in what County he has been sworn. Taylor Decl. at 1. While the document is not an affidavit, the statements are still made under penalty of perjury, and so the document constitutes an unsworn declaration pursuant to 28 U.S.C. § 1746.

5

allegations are not enough to satisfy this burden." *Id.* Here, Plaintiff has failed to satisfy even this modest burden of showing that there exist similarly situated employees.

A.   **Plaintiff has not Sufficiently Shown That Other Tow-Truck Drivers Besides Himself Failed to Receive the Minimum Wage.**

In the Complaint ¶¶ 3, 17, 49, 55-58, in the Memo of Law at 1, 3, 5, 11, and in the Taylor Decl. ¶ 2, Plaintiff states that he is seeking to recover, *inter alia*, unpaid minimum wages on behalf of himself and others similarly situated. In his declaration, however, Plaintiff fails to provide any basis – other than purely conclusory allegations – for his belief that other tow-truck drivers did not receive the minimum wage. This omission is fatal to his motion.

Courts in this district have held that such unspecific and unsupported allegations are insufficient to support conditional certification. For example, in *Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12-CIV-7193, 12-CIV-7194, 2013 U.S. Dist. LEXIS 124692, at *51-53 (S.D.N.Y. Aug. 27, 2013), the Court denied conditional certification where the evidence in support of the motion consisted of declarations that "omit[ted] key details concerning the identities of speakers and participants, and even approximate dates, when instructions allegedly were issued[.]…" The Court in *Fernandez* concluded that "Plaintiffs have not made the 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* at *53 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

Similarly, in *Ali v. N.Y.C. Health & Hosps. Corp.*, No. 11-CIV-6393, 2013 U.S. Dist. LEXIS 44091, at *7-9 (S.D.N.Y. March 27, 2013), the Court declined to conditionally certify a collective where the "sole basis for" plaintiff's belief that others were subject to a common policy, as set forth in his affidavit, was "conversations with other respiratory therapists about the fact that we worked in excess of forty hours a week." Beyond what the court deemed "uncorroborated,

anecdotal hearsay," no other information about where they specifically worked or why they worked more than forty hours per week was offered. *Id.* at *8; *see also Reyes v. Nidaja, LLC*, No. 14-CIV-9812, 2015 U.S. Dist. LEXIS 101728, at *7 (July 31, 2015) (a consensus exists in the Southern District of New York that "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.").

Similarly here, Plaintiff's motion should be denied for failing to make even a modest showing that he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the law, and for failing to provide sufficient detail regarding his allegations about other employees. Plaintiff's declaration makes the following purely conclusory assertion: "Indeed, as I noted, RJT pays its tow-truck drivers below minimum wage." Taylor Decl. ¶ 7. While Plaintiff's declaration does state that his "pay [which he claims was less than minimum wage] was essentially identical to that of all of the other individual defendants hired as tow-truck drivers," and that he learned this from discussions with "most of RJT's other tow-truck drivers," he provides no dates, no substance to these conversations, nor any names aside from Ramon Ramirez, Joe Williams, and Mr. Beck. Taylor Decl. ¶ 5. However, in relating his alleged conversations with these three specific individuals, Plaintiff states only that they discussed overtime. Taylor Decl. ¶ 5. Plaintiff does <u>not even state that</u> minimum wage was a topic of discussion with Mr. Ramirez, Mr. Williams, and Mr. Beck. Taylor Decl. ¶ 5. Accordingly, since Plaintiff only identified overtime as a topic of the alleged conversations with these three individuals (and not minimum wage or pay rate), there is no support for Plaintiff's allegation that he learned from his discussions with other tow-truck drivers that their pay was essentially identical to his, which he claims was less than the

minimum wage.  For these reasons, Plaintiff's motion should be denied insofar as it seeks to certify a collective for purposes of recovering minimum wage payments.

**B.     Plaintiff has not Sufficiently Shown That Other Tow-Truck Drivers Besides Himself Failed to Receive Pay for Overtime.**

In his Complaint ¶¶ 3, 17, 49, 59-63, in the Memo of Law at 1, 3, 5, 11, and in the Taylor Decl. ¶ 2, Plaintiff also states that he is seeking recover unpaid overtime compensation on behalf of himself and others similarly situated.  For the reasons discussed in Point II.A, above, to the extent Plaintiff relies upon undated and non-detailed alleged conversations with unnamed tow-truck drivers for the proposition that they were not paid overtime (Taylor Decl. ¶¶ 5, 6), his evidence is deficient.  While Plaintiff's affidavit does identify conversations with three particular individuals who he claims told him that they were also denied overtime (Taylor Decl. ¶¶ 5, 6), nevertheless, given his brief tenure with Defendants, his unique experiences there, and his failure to provide any details about these three individuals' working conditions, Plaintiff has failed to make a showing that he was similarly situated to these three individuals, or even that they were similarly situated to each other.

In *Ali*, 2013 U.S. Dist. LEXIS 44091, at *2-3, the plaintiff, a respiratory therapist employed by a hospital, identified his work schedule in his complaint, which amounted to more than forty hours per week.  As claimed in an affidavit, the plaintiff's belief that other respiratory therapists worked a similar schedule was based on conversations with those individuals.  *Id.* at *7-8.  Absent entirely was any information that would shed light on whether the other respiratory therapists were working these hours pursuant to a common plan or policy.  *Id.* at *8.  The court explained that merely identifying a "classification of a group of employees" or even "show[ing] that [the plaintiff] and the other proposed class [members] operated under the same job description" is insufficient.

8

*Id.* at \*7 (citing *Jenkins v. TJX Companies, Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) and

*Khan v. Airport Mgmt. Servs., LLC*, No. 10-CIV-7735, 2011 U.S. Dist. LEXIS 133134, at \*12

(S.D.N.Y. Nov. 16, 2011)).

> Here, Plaintiff alleges the following in his Complaint:
>
> Mr. Taylor was hired by defendants in January 2018, primarily as a tow-truck driver. He worked twelve (12) hour shifts every day between Mondays and Fridays until the end of his employment in May 2018. Mr. Taylor's weekly compensation from defendants consisted of a check in the amount of $550 and cash in the amount of $100, for a total of $650. The checks were sometimes accompanied by (inaccurate) check stubs.

Complaint ¶ 28.

> With regard to other employees, Plaintiff states the following in his declaration:
>
> My number of hours, work, and pay was essentially identical to that of all of the other individuals defendants hired as tow-truck drivers. I know this because I discussed the details of our work and pay with most of RJT's other tow-truck drivers, including, but not limited to Ramon Ramirez, Joe Williams, and Mr. Beck (I do not know his first name – all of the RJT employees called him "Becks"). After virtually every paycheck, Ramirez, Williams, Becks, RJT's other tow-truck drivers, and I conferred with one another to discussed [sic] how badly Tartaglione was ripping us off by never paying overtime. It quickly became apparent to all of us that RJT had a system in place which involved improperly paying tow-truck drivers in lump sums without paying 1.5 times our hourly rate for overtime.

Taylor Decl. ¶ 5.

These two paragraphs represent the entirety of Plaintiff's showing that he and other tow-truck drivers were allegedly similarly situated with regard to being denied overtime pay. Plaintiff, in merely stating that he had conversations with Mr. Ramirez, Mr. Williams, and Mr. Becks, who all share the same job title of tow-truck driver, has adduced evidence of the same quality that was rejected by the Court in *Ali, supra.*

9

Moreover, Plaintiff offers no evidence that other tow-truck drivers worked 12-hours days. In fact, when referring to his alleged conversations with Mr. Ramirez, Mr. Williams, and Mr. Beck in the second sentence of paragraph 5 of the Taylor Declaration, Plaintiff states vaguely that they discussed "details of our work and pay." Conspicuously absent as a subject of conversation is the "number of hours" they worked, despite the fact that in the preceding sentence, Plaintiff states that he *knows* the "number of hours" were the same for all tow-truck drivers. Taylor Decl. ¶ 5. Furthermore, when Plaintiff more specifically describes his conversations with these three individuals, he notes that they commiserated over the failure to receive overtime compensation, but does not say that they discussed the hours they worked. Taylor Decl. ¶ 5. Rather, Plaintiff states, in a conclusory manner, that it "quickly became apparent" that Defendants "had a system in place" not to pay overtime. Taylor Decl. ¶ 5. These highly generalized, conclusory recitations of these conversations are even less persuasive given that Plaintiff provides no dates for these conversations, does not distinguish which individuals were present during which conversations, nor provide any specific statements allegedly made by any of the parties to the conversations. *See Reyes,* 2015 U.S. Dist. LEXIS 101728, at *7. Based on this showing, it is far from clear whether Plaintiff worked the same schedule (he claims to have worked) as Mr. Ramirez, Mr. Williams, and Mr. Beck, let alone, any other tow-truck drivers.

In addition, Plaintiff initially stated in his Complaint that he was hired "primarily" as a tow-truck driver. Complaint ¶ 28. Yet, neither in the Complaint nor in his declaration does he indicate what other duties he performed, how much time each day was dedicated to those other duties, and to what extent his pay was affected by his performance of those other duties. Given this uncertainty about Plaintiff's own job duties, Plaintiff's assertion that his work was "essentially

10

identical" to the work of Mr. Ramirez, Mr. Williams, and Mr. Beck – who appear to be exclusively tow-truck drivers – is not very compelling.  In his declaration, Plaintiff states that he was hired as a tow-truck driver and omits the "primarily" qualifying language that he used in his Complaint, but no explanation is provided for this discrepancy.  This becomes yet another source of ambiguity surrounding the putative collective.

Moreover, there are other notable aspects to Plaintiff's employment with Defendants, which Plaintiff does not assert are shared by other tow-truck drivers, and which militate against a finding that they are similarly situated.  While Plaintiff claims that he is similarly situated to employees working for Defendants for the three-year period preceding the filing of the Complaint, Plaintiff himself was only employed with Defendants for a period of less than five months. Complaint ¶ 16; Taylor Decl. ¶ 3.

Additionally, Plaintiff asserts that each week he received a check, in addition to cash, as well as sometimes, inaccurate check stubs.  Complaint ¶ 28.  However, Plaintiff provides no evidence to suggest that Mr. Ramirez, Mr. Williams, Mr. Beck, or other tow-truck drivers received their pay in a similar manner, or that their check stubs were inaccurate.

In short, Plaintiff appears to believe that all tow-truck drivers employed by Defendants for the three-year period preceding the filing of the Complaint performed similar duties to those performed by him, worked a schedule similar to the twelve-hour day he purports to have worked, worked Monday through Friday, were paid in a similar manner by check and cash, and were subject to a policy and practice of denying them all pay for those hours worked in excess of forty hours per week.  The showing made through Plaintiff's Complaint and declaration, essentially consisting of vague allusions to indistinct conversations with three employees, bolstered by conclusory

11

assertions, falls well short of satisfying Plaintiff's burden. *See Romero*, U.S. Dist. LEXIS 61151, at \*27 ("Conclusory allegations are not enough to satisfy this burden"); *Reyes*, 2015 U.S. Dist. LEXIS 101728, at \*7 (conversations with employees must include "a minimum level of detail").[2]

The cases relied upon by Plaintiff to the contrary are unconvincing.    Plaintiff cites *Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551, 2016 U.S. Dist. LEXIS 141916, at \*9 (S.D.N.Y. Oct. 13, 2016) for the proposition that a single affidavit may be sufficient to make the necessary showing. Memo of Law at 11.  In making this point, however, the court in *Fernandez* emphasized that regardless of how many affidavits are submitted, they must contain "the specificity and detail that our caselaw requires[.]…" *Id.* at \*10.  In fact, the court determined that the two affidavits submitted by both named plaintiffs, relying upon "observations and conversations with coworkers" were not sufficient. *Id.* at \*8-9.  That was because, as with the Taylor declaration submitted here, the affidavits offered by the *Fernandez* plaintiffs did not "'provide *any* detail as to a *single*…observation or conversation' which would substantiate their knowledge." *Id.* (quoting *Sanchez v. JMP Ventures, LLC*, No. 13-CV-7264, 2014 U.S. Dist. LEXIS 14980, at \*5 (S.D.N.Y. Jan. 27, 2014)) (emphasis in original).

---

[2] Plaintiff, in his declaration and Memorandum of Law, asserts that his counsel consulted with both himself and Mr. Williams at a meeting in 2018 concerning a potential lawsuit against Defendants.  Taylor Decl. ¶ 11; Memo of Law at 4-5.  Plaintiff contends that Mr. Williams decided not to join this litigation based on a purported "well established reputation for vindictiveness" on the part of Defendants.  *Id.*  While this false accusation has no relevance to the pending motion, it may become material to Defendants' defense of the merits.  In this regard, Defendants may seek discovery from Plaintiff's counsel concerning his meeting with Mr. Williams, in which case Plaintiff's counsel may become a witness and may be conflicted out of representing Plaintiff. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419-20 (S.D.N.Y. 2015); Rule 3.7(a) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200.0.

In another case cited by Plaintiff, *Juarez v. 449 Res., Inc.* 29 F. Supp. 3d 363, 371-72 (S.D.N.Y. 2014) (Memo of Law at 11), a showing that similarly situated employees existed among the employees at defendants' multiple diners was made through an affidavit in which the plaintiff "describe[d] specific similarities between the restaurants, such as the facts that the 'uniforms worn by cooks and similar workers were the same,' that the diners shared a website, and that the interior design and menus were similar between the three diners." Here, the level of detail contained in Plaintiff's declaration pales in comparison to what was offered in *Juarez*.

Plaintiff also cites *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 374 (E.D.N.Y. 2008) (Orenstein, Mag. J) for the proposition that "well-pleaded allegations" alone can justify conditional certification. Still, irrespective of whether pleadings alone – or affidavits as well – are offered, the allegations contained in either document must not be merely conclusory. *See Morales v. Plantworks, Inc.*, No. 05-CIV-2349, 2006 U.S. Dist. LEXIS 4267, at *6-7 (denying conditional certification where "plaintiffs have offered only a conclusory allegation in their complaint"). Here, as demonstrated, the allegations in both the Complaint and Taylor declaration are, in fact, conclusory.

For these reasons, Plaintiff's motion should also be denied insofar as it seeks to certify a collective for purposes of recovering unpaid overtime.

**C.    Plaintiff's Putative Collective is Deficient Insofar as it Includes Employees Seeking Unpaid Minimum Wages and Overtime for a Six-Year Period, Which is Beyond the FLSA's Recovery Period, and Insofar as it Includes Employees Seeking "Spread of Hours Pay," Which is not Recoverable Under the FLSA.**

According to Plaintiff's Memorandum of Law, he is seeking the following relief in this motion:

13

> Plaintiff brings the FLSA claims on behalf of himself and similarly situated co-workers – i.e. employees who drove tow-trucks for defendants' automotive servicing, auto body repairs, towing and road services business ("Covered Employees") – who work or have worked for defendants **within the last six years** seeking to recover unpaid minimum wages, overtime compensation, **spread-of-hours pay**, and statutory penalties. The Complaint seeks to recover damages because, *inter alia*, with respect to Covered Employees, Defendants (1) failed to pay the proper minimum wage under the FLSA; and (2) failed to pay overtime premium under the FLSA.

Memo of Law at 1 (emphasis supplied).

The statute of limitations under the FLSA is two years for non-willful violations and three years for willful violations. *Bittencourt v. Ferrara Bakery & Café, Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (citing 29 U.S.C. § 255(a)). The scope of the collective can therefore be defined as either two or three years. *Id.* Plaintiff has offered no authority – as none exists – supporting his proposal for a collective consisting of employees who have worked for Defendants for the past six years.

Furthermore, "spread-of-hours pay" is a legal entitlement under the New York Labor Law to "'one hour's pay at the basic minimum wage rate' for any workday that lasts longer than 10 hours." *Flores v. Chirping Chicken NYC*, No. 14-CV-1594, 2017 U.S. Dist LEXIS 33381, at *15-16 (S.D.N.Y. March 6, 2017) (citing 12 NYCRR § 142-2.4(a); NYLL §§ 650 *et seq.*). This relief is not available under the FLSA. *Id.*; *see also* 29 U.S.C. §§ 201 *et seq.* A plaintiff may bring an FLSA collective action on behalf of himself and similarly situated "employees seeking to recover under *FLSA's substantive provisions.*" *See Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2009) (emphasis supplied) (construing 29 U.S.C. § 216(b)). Plaintiff has offered no authority – as none exists – supporting his proposal for a collective consisting of employees seeking relief that is not available under the FLSA.

14

Likewise, to the extent, "statutory penalties" in Plaintiff's proposed definition above refers to penalties under the NYLL as opposed to penalties under the FLSA, it is also deficient on that basis.

Consequently, the instant motion should be denied insofar as it seeks to conditionally certify a collective covering more than the three-year maximum time period under the FLSA or seeking relief that is not available under the FLSA.

## III.   WHILE CONDITIONAL CERTIFICATION SHOULD BE DENIED, IF THE COURT DOES GRANT THE INSTANT MOTION, PLAINTIFF'S REQUEST FOR EQUITABLE TOLLING SHOULD BE DENIED BECAUSE NO UNUSUAL OR EXTRAORDINARY CIRCUMSTANCES EXIST TO JUSTIFY THIS MEASURE.

Plaintiff notes that courts have equitably tolled the statute of limitations for members of the putative collective pending resolution of motions for conditional certification, but offers no reasons why the Court should exercise its discretion to order this equitable relief here.  Memo of Law at 18-19.

In *Liiun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-CV12220, 2019 U.S. Dist. LEXIS 154246, at *52-56 (S.D.N.Y. Sept. 6, 2019), the Court noted: "The Second Circuit has cautioned that 'equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstances[s]," citing *A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011).  In FLSA cases, these "rare and exceptional circumstances" include cases where the existence of the action was concealed by defendants and where courts have heavy dockets and understandable delays in rulings.  *Id.*  In *Liiun Geng*, the Court declined to order equitable tolling because the plaintiff offered no specific information tending to suggest that any opt-in plaintiffs would actually have their claims barred in the interim between the filing of the action and the mailing of the notice. *See id.* at *55.

15

Here, Plaintiff has offered no suggestion that Defendants have concealed the claims from employees, nor that any single member of the putative collective will have their claims time-barred absent equitable tolling.  Consequently, Plaintiff's claim for equitable tolling should be denied.

**IV.   WHILE CONDITIONAL CERTIFICATION SHOULD BE DENIED, IF THE COURT DOES GRANT THE INSTANT MOTION, PLAINTIFF'S PROPOSALS CONCERNING NOTICE TO THE COLLECTIVE SHOULD BE MODIFIED TO BETTER ALIGN WITH THIS COURT'S JURISPRUDENCE.**

**A.   The Notice Period Should be Three Years.**

The members of a collective can only seek relief for violations that occurred within the statute of limitations established in the FLSA.  *See Bittencourt*, 310 F.R.D. at 116.  That is two years for non-will violations and three years for willful violations.  *Id.*  Accordingly, notice of the collective action should be sent only to those similarly situated individuals employed by Defendants for the past three years.  *See Ramos*, 2014 U.S. Dist. LEXIS 100549, at *11 ("Because the only purpose of permitting notice in these circumstances is to 'notify and inform those eligible to opt in to the collective action,' there is 'no purpose' in sending notice to employees whose claims would be time-barred under the FLSA."), quoting *Lujan v. Cabana Mgmt., Inc.*, No. 10-CIV-755, 2011 U.S. Dist. LEXIS 9542, at *9 (E.D.N.Y. Feb. 1, 2011); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) ("It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims.").

While courts within the Second Circuit have occasionally ordered that notice be sent to similarly situated individuals employed within the past six years, that has typically occurred when a Rule 23 motion for certification of a class seeking relief under the NYLL is being considered. *See Ramos v. Platt*, No. 13-CV-8957, 2014 U.S. Dist. LEXIS 100549, at *10-11 (S.D.N.Y. July 23, 2014).  In *Ramos,* the Court explained: "Cases adopting six-year periods have been based on

16

supposed "economy of providing notice to plaintiffs with FLSA claim who may also have NYLL claims subject to a six-year statute of limitations[,]" *Id.* (citing *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013)). For example, in *Benavides v. Serenity Spa N.Y., Inc.*, 166 F. Supp. 3d 474, 484-486 (S.D.N.Y. 2016), a six-year notice period was approved where plaintiff "offer[ed] factual evidence that would support claims under NYLL and she anticipate[d] making a Rule 23 class certification motion."). This appeal to judicial economy is not present when a Rule 23 motion is neither pending nor being considered. *See Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672, 2016 U.S. Dist. LEXIS 36324, at *14 (S.D.N.Y. March 10, 2016) ("plaintiffs have not moved to certify a class under the NYLL. They do not explain how efficiency or judicial economy are enhanced if the collective action notice includes a six-year limitations period for NYLL claims that have not received class certification.").

Here, no Rule 23 class certification motion is pending. While the Complaint, which was filed back in February 6, 2019, contains allegations on behalf of a putative Rule 23 class, Plaintiff has not indicated in any other filings or conferences with the Court that he actually intends to move for Rule 23 class certification. Indeed, on May 14, 2019, the following direction appeared within a minute entry on the docket: "The Parties agreed to referral to Judge Davison for settlement purposes. Within 30 days after the referral issued, Plaintiff will file a letter indicating the status of the case and including a proposed schedule for any potential Motion for Class Certification." In response, by letter dated June 13, 2019, Plaintiff stated:

> We are serving this report pursuant to your directives of May 14, 2019, which instructed plaintiff to provide the status of the matter with respect to mediation before Judge Davison, and to include a proposed schedule for **any potential Motion for Class Certification**, within thirty days.

(Doc. No. 21) (emphasis supplied).   Plaintiff then proposed a schedule for a "motion for conditional collective certification," but not for a Rule 23 motion for class certification.  *Id.*

Furthermore, in the instant motion, Plaintiff never states that he is seeking a six-year notice period in order to ascertain whether potential Rule 23 class members exist, or for any other reasons intended to inform his decision whether to seek Rule 23 class certification.  *See* Memo of Law at 12-13.   In fact, Plaintiff's memorandum of law provides no reason for a six-year notice period aside from the fact that it purportedly "harmonizes with the practices of many district courts within this Circuit."  Memo of Law at 12-13.

However, Plaintiff's proposed Notice of Pendency (Doc. No. 30-4) indicates, in several places, his apparent intention to use the FLSA notice to inform employees (who have no timely FLSA claims) that they have a right to file NYLL claims against Defendants: "Taylor . . . has filed a lawsuit . . . claiming, *inter alia*, that Defendants did not pay him the mandatory statutory minimum wage rate or properly pay him overtime under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") (*Id.* at 1); "You are eligible to make a state claim if you worked for the Defendants at any time since February 6, 2013" (*Id.* at 2); "You may qualify if you have worked as a tow-truck driver for the Defendants at any time from February 6, 2013 to the present" (*Id.*) – which is a period extending back six years, covering the NYLL statute of limitations period.   Sending notice in order to alert employees to potential NYLL claims is inconsistent with the purpose of the notice as described in the case law in the Southern District of New York. *See, e.g., Ramos*, 2014 U.S. Dist. LEXIS 100549, at *10-11; *Benavides*, 166 F. Supp. 3d at 484-486.

18

Consequently, if the Court grants Plaintiff's motion for conditional certification, Plaintiff's proposed Notice should be modified to reflect a notice period of three years, and not six years.

**B.    The Notice Period Should Look Back From the Date the Notice is Sent and Not From the Date of the Complaint.**

If the Court grants Plaintiff's motion for conditional certification, notice should be sent to similarly situated employees who worked for Defendants during the three year period preceding the date the notice is sent. *See Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (citing *Anglada v. Linens n' Things, Inc.*, No. 06-CV-12901, 2007 U.S. Dist. LEXIS 39105, at *26, n. 5 (S.D.N.Y. April 26, 2007)) (finding that it is more in keeping with 29 U.S.C. § 256(b) to construe the limitations period as beginning to run three years prior to the date of the notice rather than on the date the complaint was filed).   That is because the statute of limitations continues to run for members of the putative collective up until they consent to join the action, following mailing of the notice. *Doucoure*, 554 F. Supp. 2d at 372, n. 3.   Looking back three years from the date the notice is sent – as opposed to the date the complaint is sent – is designed to reach those employees who actually have timely claims. *See id.* at 373.

Plaintiff, however, seeks to have the notice period look back from the date the Complaint was filed.   Memo of Law at 13.   As explained, this could result in the notice being sent to employees whose claims have already been time-barred.   The case Plaintiff relies upon for this request is *Chhab v. Darden Rests., Inc.*, No. 11-CIV-8345, 2013 U.S. Dist. LEXIS 135926, at *47-48 (S.D.N.Y. Sept. 2013).   However, in that case, the court had equitably tolled the statute of limitations for putative members of the collective to the date of the complaint. *Id.*   As a result, employees who opted into the action months, or even years, after the complaint had been filed

could still have timely claims up to the three years prior to the date of the complaint. *See id.* Under those circumstances, it was logical to look back from the date of the complaint.

The instant matter is distinguishable from *Chhab* because, as explained in Point III, above, no equitable tolling is warranted. Without equitable tolling, the statute of limitations for putative members of the collective continues to run even after the complaint is filed. It is not until they opt in to the action, after receipt of notice, that the statute ceases to continue running for them. Consequently, there is no reason to deviate from the standard practice of looking back three years from the date notice is sent.

C.   **Plaintiff's Request That Defendants Provide Compensation Rates Should be Denied Because This Information Does not Facilitate the Sending of Notices.**

The names, titles, last known mailing addresses, email addresses, and dates of employment, all requested by Plaintiff, represent sufficient contact information to enable Plaintiff to notify putative members of the collective about this lawsuit. Memo of Law at 13-14. Plaintiff, however, provides no authority for his entitlement to "compensation rates" and fails to explain how that would facilitate sending notices. *See id.* For this reason, the request should be denied. *See Lora v. To-Rise, LLC*, No. 16-CV-3604, 2017 U.S. Dist. LEXIS 112644, at *57 (E.D.N.Y. July 18, 2017) (no "persuasive reason" articulated for why compensation rates were needed, and "requiring disclosure of this information for all potential collective members, whether they opt in to the case or not, serves little purpose and would be unduly burdensome.").

D.   **Plaintiff's Request That Defendants Provide Social Security Numbers Should be Denied Because Disclosure of This Information Infringes Privacy Rights.**

Plaintiff seeks Social Security numbers in order to execute "skip traces" in the event that notices are returned undelivered by the Postal Service. Memo of Law at 13-14. While Plaintiff

cites to two cases where Social Security numbers were ordered to be disclosed, the more compelling authority comes from those cases which balances the privacy concerns of the employees against the legitimate needs of the plaintiff. *See Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 U.S. Dist. LEXIS 99089, at *40-41 (E.D.N.Y. June 29, 2015) (Scanlon, Mag. J), *adopted by*, 2015 U.S. Dist. LEXIS 99417 (E.D.N.Y. July 29, 2015) (request for Social Security numbers was denied because the plaintiff "has not alleged any particular need for this sensitive information"); *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2006 U.S. Dist. LEXIS 69021, at *16 (W.D.N.Y. Sept. 22, 2006) (denying request for Social Security numbers, stating "potential certified class members' interest in keeping such information confidential is more important than facilitating Plaintiffs' search for those members"); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) (denying request for Social Security numbers out of "privacy concerns").

Should Plaintiff truly be unable to reach employees with the addresses provided, the Court can revisit his request at that time. *See id.* ("If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees.").

### E.   Plaintiff's Request That Defendants Provide Telephone Numbers to Facilitate Notice by Text Message Should be Denied Because Disclosure of This Information is Not Appropriate Outside of a High-Turnover Business.

Plaintiff also seeks telephone numbers, presumably to facilitate his proposed notice by text message. However, notice via text message is usually not permitted in the Southern District of New York absent evidence of high employee turnover. *See Turban v. Bar Giocosa Corp.*, 2019 U.S. Dist. LEXIS 140581, at *2 (S.D.N.Y. Aug. 14, 2019) (denying text message notice where

"[p]laintiffs have not sufficiently demonstrated that turnover and relocation by potential members of the collective will render mailed notice ineffective"); *Park v. FDM Group, Inc.*, No. 16-CV-01520, 2019 U.S. Dist. LEXIS 86309, at *18-19 (S.D.N.Y. May 22, 2019) (text message notice denied where no evidence about turnover rate was offered). Notice by text message is usually only permitted when the employer is shown to be in an industry with high rates of employee turnover, most typically, the restaurant business, such that last known addresses may be less reliable. *See Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492, 2017 U.S. Dist. LEXIS 213961, at *21-22 (S.D.N.Y. May 22, 2017) (recognizing text message notice permitted where "nature of employer's business facilitated a high turnover rate among employees", and allowing such notice for group of fast food workers).

Here, Plaintiff has failed to make any showing, or even argue, that Defendants operate a business with a high rate of turnover among its employees, such that more traditional modes of notice would be insufficient. Accordingly, Defendants should not be required to provide telephone numbers for this purpose.

**F.      The Various Notices, and Consent to Join Form, Proposed by Plaintiff Have Defects That Must be Remedied.**

      **1.      Notice of Pendency**

The first page of Plaintiff's proposed Notice of Pendency states: "If you worked for <u>R.J.T. Motorist Services, Inc.</u> within the last 6 years, you may be eligible to join this Lawsuit." To avoid confusion, this sentence should be modified to refer to those individuals who "worked as tow-truck drivers," which is the group of employees for which Plaintiff is arguably seeking conditional certification. *See* Point II, above.

Furthermore, the purpose of the notice is to alert individuals with timely FLSA claims that they can act collectively to recover unpaid minimum wages and overtime pay from an employer going back up to three years. *See Benavides*, 166 F. Supp. 3d at 484. Thus, this sentence ("If you worked for R.J.T. Motorist Services, Inc. within the last 6 years, you may be eligible to join this Lawsuit.") should also be modified to refer only to those tow-truck drivers who worked "within the last 3 years." Therefore, the sentence should be modified as follows: "If you worked for <u>R.J.T. Motorist Services, Inc.</u> as a tow-truck driver within the last 3 years, you may eligible to join this Lawsuit."

For the same reason, the references in the notice to potential New York Labor Law ("NYLL") claims are improper. The phrase "New York Labor Law ("NYLL")" should be omitted from the "What's this Case About?" section on page 1. Likewise, the phrase on page 2, "You are eligible to make a state claim if you worked for the Defendants at any time since February 6, 2013" should be omitted.

Moreover, the "Do I Qualify to Join the Lawsuit?" section on page 2 inaccurately states: "You may qualify if you have worked as a tow-truck driver for the Defendants at any time from February 6, 2013 to the present." As explained in Point II.C, above, only those individuals with timely FLSA claims would qualify to join the collective. It is entirely misleading to inform employees who worked six years ago that they might qualify. As established in Point IV.B, above, the time frame should be modified to three years prior to the date notice is sent. Therefore, the "Do I Qualify to Join the Lawsuit?" section on page 2 should be revised to state "You may qualify if you have worked as a tow-truck driver for the Defendants at any time from three years prior to the date of this Notice to the present."

23

In addition, the footer at the bottom of page 4 provides contact information for an attorney who has not entered an appearance in this case and is currently not seeking to represent the collective. The contact information should be corrected to be consistent with that provided in the footers to pages 1 through 3 of the notice.

Finally, the notice should provide a section informing members of the putative collective of their right to retain their own counsel, and that they may be required to participate in discovery and testify at trial. *See Diaz v. S&H Bondi's Dep't Store, Inc.*, No. 10-CIV-7676, 2012 U.S. Dist. LEXIS 5683, *20-21 (S.D.N.Y. Jan. 17, 2012) ("approved notice will state that participating plaintiffs may retain their own counsel."); *Hernandez v. The Fresh Diet Inc.*, No. 12-CIV-4339, 2012 U.S. Dist. LEXIS 169332, *8 (S.D.N.Y. Nov. 21, 2012) (opt-in plaintiffs must be advised that they "can join this lawsuit by representing yourself, retaining counsel of your own choosing, or being represented by Plaintiffs' attorneys"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2011) (language advising opt-in plaintiffs that they will have to comply with discovery requests and testify at trial is "routinely accepted").

## 2.   Consent to Join Form

The proposed Consent to Join Form (Doc. No. 30-5) should be modified to indicate that they will be returned to the Court Clerk rather than to Plaintiff's counsel. Courts have held that provisions requiring individuals opting in to the action to forward their consent forms to the existing plaintiffs' counsel "improperly discourages class members from seeking outside counsel, and thus, they have directed that these forms be sent to the Clerk of the Court." *Iriarte v. Redwood Deli and Catering, Inc.*, No. CV-07-5062, 2008 U.S. Dist. LEXIS 50072, at *12 (E.D.N.Y. June 30, 2008) (quoting *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 84 (E.D.N.Y. 2008)

(Pollak, Mag. J), *adopted by* 546 F. Supp. 2d 55 (E.D.N.Y. 2008)); *Hallisey v. America Online, Inc.*, No. 99-CIV-3785, 2008 U.S. Dist. LEXIS 18387, at *11 (S.D.N.Y. Feb. 19, 2008); *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 U.S. Dist. LEXIS 75817, at *27 (E.D.N.Y. Oct. 11, 2007).

### 3.   Reminder Notice

For the reasons described in Point IV.F.1, above, the proposed Reminder Notice (Doc. No. 30-8) should be amended to state that the action has been filed on behalf of "tow-truck drivers" as opposed to "employees" as it is currently drafted.  In addition, for the reasons described in Point IV.F.2, above, this notice should be modified to inform those completing the Consent to Join Form that they must return that signed form to the Clerk of the Court rather than to the Plaintiff's counsel, as presently indicated.

### 4.   Text Message Notice

As articulated in Point IV.E, above, Text Message Notice (Doc. No. 30-7) should be prohibited.  To the extent it is authorized by the Court, the notice should nonetheless be modified, for the reasons set forth in Point IV.F.1, above, to indicate the relevant time period as three years prior to the mailing of the Notice of Pendency, as opposed to "February 6, 2013 to the present" as currently drafted.

### 5.   Email Notice

The Email Notice (Doc. No. 30-8) should be modified, for the reasons set forth in Point IV.F.1, above, to indicate the relevant time period as three years prior to the mailing of the Notice of Pendency, as opposed to "February 6, 2013 to the present" as currently drafted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification of an FLSA collective action should be denied.  In the alternative, the definition of the collective should be limited to tow-truck drivers for Defendants, equitable tolling should be denied, the relevant time period should be limited to three years from the date the Notice is sent, and the notice provisions should otherwise be amended to better align with the purposes of the FLSA.


Dated: White Plains, New York        **FRUMKIN & HUNTER LLP**
        October 29, 2019

       By:    /s/ William D. Frumkin
             William D. Frumkin, Esq.
             Elizabeth E. Hunter, Esq.
             Jordan M. Kaplan, Esq.
             1025 Westchester Avenue, Suite 309
             White Plains, New York 10604
             wfrumkin@frumkinhunter.com
             ehunter@frumkinhunter.com
             jkaplan@frumkinhunter.com
             (914) 468-6096

             *Attorneys for Defendants*

26