UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY TAYLOR, on behalf of himself and
others similarly situated,

                Plaintiff,

         -against-

R.J.T. MOTORIST SERVICE, INC., *et al.*,

             Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-01155 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Anthony Taylor ("Plaintiff"), on behalf of himself and others similarly situated, brings this action against his former employers, Defendant R.J.T. Motorist Service, Inc. ("R.J.T.") and its owner Raymond Tartaglione ("Tartaglione" and collectively "Defendants"), for: (1) failure to pay minimum wages, failure to pay overtime wages, and retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) failure to pay minimum wages, failure to pay overtime wages, failure to pay "spread-of-hours" pay, failure to provide wage notices, failure to provide accurate wage statements, and retaliation under the New York Labor Law and associated New York State Department of Labor regulations (collectively, the "NYLL Claims"); and (3) conversion for taking Plaintiff's pickup truck. (Doc. 1, "Compl." ¶¶ 55-104).

On September 13, 2019, Plaintiff moved to conditionally certify a collective action under the FLSA with respect to those claims alleging failure to pay minimum and overtime wages ("Collective Claims"). (Doc. 27, "Not. of Mot."). On April 16, 2020, this matter was reassigned to me. For the reasons set forth below, Plaintiff's motion to conditionally certify a collective action under the FLSA is GRANTED.

## BACKGROUND

The allegations herein are taken from Plaintiff's Complaint and Affidavit in Support of Motion, and are considered true herein for purposes of Plaintiff's extant motion and no other purpose. R.J.T. is a company that "provides the White Plains area and its surrounding communities [with] Automotive Servicing, Auto body Repairs, Towing and Road Services." (Compl. ¶ 10 (internal quotation marks omitted); Doc. 37-1, Ex. K, Aff. of Anthony Taylor ("Taylor Aff.") ¶ 3 (same)). Plaintiff worked as a tow-truck driver for R.J.T. from January 2018 until May 2018. (Compl. ¶¶ 28, 34; Taylor Aff. ¶¶ 3, 10). Plaintiff "worked twelve (12) hour shifts every day between Mondays and Fridays" throughout his five-month tenure with the company. (Compl. ¶ 28; Taylor Aff. ¶ 3). Plaintiff's weekly compensation for working sixty-hour weeks consisted of $100.00 in cash and $550.00 by check, for a total of $650.00. (Compl. ¶ 28; Taylor Aff. ¶ 3).

Plaintiff's weekly schedule, duties, and pay were "essentially identical" to R.J.T.'s other tow-truck drivers. (Taylor Aff. ¶ 5). This allegation is based on the fact that "[a]fter virtually every paycheck" Plaintiff spoke "with most of RJT's other tow-truck drivers" about how tow-truck drivers were not paid overtime. (*Id.*). Plaintiff states specifically that he had these conversations with Ramon Ramirez, Joe Williams, and an individual known as "Becks" or "Mr. Becks," in addition to others. (*Id.*). Plaintiff recounts that he "checked with other co-workers after receiving the overwhelming majority, if not all, of [his] checks." (*Id.* ¶ 6). Neither Plaintiff nor any of the other drivers identified received overtime compensation. (*Id.*). Plaintiff maintains further that, on at least four occasions, R.J.T. made unlawful deductions from his weekly compensation when customers failed to pay for services rendered. (*Id.* ¶ 8). Plaintiff discussed each of these deductions with other tow-truck drivers—including Ramirez, Williams, and Becks—at the time they occurred, and "all advised that they had also had unlawful deductions taken from their paychecks when customers failed to pay their bill . . . ." (*Id.* ¶ 9).

2

## ANALYSIS

The stated objective of the FLSA is to "eliminate," for those industries within its purview, "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. §§ 202(a)-(b).  To this end, the FLSA mandates, *inter alia*, that covered employers pay a specific minimum wage and a specific rate for overtime compensation. 29 U.S.C. §§ 206, 207. Should an employer fail to comply with these obligations, the statute permits the impacted employee to bring an action "against any employer . . . in any Federal or State court of competent jurisdiction . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Claims under the FLSA are subject to a two-year statute of limitations unless they were "willful," in which case the statute recognizes a three-year period. 29 U.S.C. § 255(a). An individual "commences" an action either "(a) on the date the complaint is filed, if he is specifically named as a party in the complaint and his written consent to become a party plaintiff is filed . . . or (b) . . . on the subsequent date on which such written consent is filed . . . ." 29 U.S.C. § 256.

The Second Circuit explained recently that 29 U.S.C. § 216(b), the provision which allows a plaintiff to bring an action on behalf of himself and others, "establishes a right . . . to bring an action by or on behalf of any employee, and a *right* of any employee to become [a] party plaintiff to such an action, so long as certain preconditions are met." *Scott v. Chipotle Mex. Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (alterations in original, internal quotation marks omitted). "Although they are not required to do so by the FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations in original, internal quotation marks omitted). Courts in the Second

Circuit follow a two-step analysis when determining whether to certify[1] a collective action under 29 U.S.C. § 216(b):

> At step one, the district court permits notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others were victims of a common policy or plan that violated the law. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.

*Scott*, 954 F.3d at 515 (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015)).

The first stage of the analysis outlined above, commonly referred to as "conditional certification" and at issue here, asks that the Court "determine *whether* similarly situated plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citation omitted). As such, without resolving factual disputes or assessing the merits of the case, the Court's task "is to ascertain whether the plaintiff has made the modest factual showing that []he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the law." *Aguilo v. Vails Gate Cleaners Inc.*, No. 18-CV-8850, 2020 WL 3545558, at *3 (S.D.N.Y. June 30, 2020) (internal quotation marks omitted). Plaintiff may meet this "modest factual showing" with reference to his "own pleadings, affidavits, and declarations, including any hearsay statements contained therein" and the Court is required to "draw all inferences in [his] favor" without resolving credibility or factual disputes. *Chen v. Kicho Corp.*, No. 18-CV-7413, 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020) (internal quotation marks omitted). While this "fairly lenient standard" means that "courts typically grant[]

---

[1] Orders allowing notice to potential opt-in plaintiffs "are often referred to as orders 'certifying' a collective action." *Shi v. TL & GC Inc.*, No. 19-CV-08502, 2020 WL 4586359, at *2 (S.D.N.Y. Aug. 10, 2020). That is a misnomer. "Rather than creating a class of plaintiffs for a collective action, it serves as a 'case management tool' to facilitate notice to potential class members." *Id.* (quoting *Myers*, 624 F.3d at 555 n.10). To this point, "[t]he Supreme Court has characterized § 216(b) as a joinder process." *Scott*, 954 F.3d at 515 (internal quotation marks omitted).

conditional certification," *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) (alterations in original, internal quotation marks omitted), the outcome is not preordained. "[T]he plaintiff must offer substantial allegations demonstrating a factual nexus between [himself] and the potential opt-in plaintiffs." *Aguilo*, 2020 WL 3545558, at *3 (internal quotation marks omitted). Plaintiff has made the "modest factual showing" required at this stage.

A. <u>Collective Certification Allegations</u>

Plaintiff identified his position, weekly schedule, and pay (Taylor Aff. ¶ 3), and asserted that these particulars were "essentially identical to . . . all of the other individuals defendants hired as tow-truck drivers" (*Id*. ¶ 5). This conclusion stems from the fact that Plaintiff "discussed the details of our work and pay with most of RJT's other tow-truck drivers, including, but not limited to" Ramirez, Williams, and Beck. (*Id*.). Those conversations took place "[a]fter virtually every paycheck" (*id*.) and confirmed that neither Plaintiff nor any other tow-truck driver—including Ramirez, Williams, or Beck—received overtime (*id*. ¶ 6), and that all experienced unlawful deductions (*id*. ¶¶ 8-9). Drawing all inferences in Plaintiff's favor, with respect to Defendants' practice of failing to pay federally-mandated minimum wage and overtime rates (Compl. ¶¶ 57, 62), Plaintiff has made the modest showing required to suggest that "potential opt-in plaintiffs were victims of a common policy or plan that violated the law." *Aguilo*, 2020 WL 3545558, at *3 (internal quotation marks omitted). Plaintiff has presented a factual nexus between himself and potential opt-in plaintiffs as each is a tow-truck driver at R.J.T.

Defendants insist that Plaintiff failed to meet his burden because Plaintiff offers only his own affidavit containing "conclusory" allegations that do not support the existence of similarly situated individuals. (Doc. 33, "Def. Opp'n." at 5-13). However, it is the quality, not the quantity, of evidence that must be considered; a single affidavit will suffice "so long as it is sufficiently

detailed about the plaintiff's observations, conversations and experiences involving similarly situated employees." *Kicho Corp.*, 2020 WL 1900582, at *6 (internal quotation marks omitted) (collecting cases); *see also Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091, 2020 WL 3618892, at *6 (E.D.N.Y. July 2, 2020) (collecting cases). Plaintiff's sworn statement identifies, based upon almost weekly conversations over five months, no less than three other individuals whose "hours, work, and pay" were "essentially identical" to his own and similarly subject to Defendants' failure to pay minimum and overtime wages as well as improper deductions thereof. (Taylor Aff. ¶¶ 3, 5-6, 8-9). Conditional certification is appropriate based on representations of such conversations. *See Viriri*, 320 F.R.D. at 349-50. "While the Court agrees that Plaintiff could have supplemented his" affidavit with more information, "the failure to provide that detail is not sufficient to defeat conditional certification here." *Id.* at 350. Although discovery may reveal "that Plaintiff's experience was unique" and that Defendants have a basis to move for "decertification," for the analysis required at this juncture, the showing is sufficient. *Id.*

## B.  The Temporal Scope of the Authorized Collective

Plaintiff argues that the collective's temporal scope should stretch back six years from the date the Complaint was filed.[2] (Doc. 28, "Pl. Br." at 12-13; Doc. 36, "Reply Br." at 8-9). Plaintiff insists that since the FLSA claims are "intertwined" with the NYLL Claims (Reply Br. at 8), this method would "harmonize[]" with standard practice in the Second Circuit (Pl. Br. at 12). Defendants counter that because the pending motion concerns itself only with willful violations of the FLSA, and each individual's statute of limitations runs until he or she consents in writing to join the collective action, the correct scope looks back three years from the date on which notice

---

[2] Plaintiff argues incorrectly that applying this six-year period would "include[] any Covered Employees from July 31, 2011 to present." (Pl. Br. at 13). The Complaint was filed on February 6, 2019, thus Plaintiff's calculations would stretch back to 2013, not 2011.

is sent to potential opt-in plaintiffs. (Def. Opp'n. at 16-19). For the following reasons, the Court concludes that Defendants' position is correct.

Turning first to the length of time, an aggrieved individual has, at most, three years within which to commence an action for FLSA violations, 29 U.S.C. § 255(a), and the pending motion seeks only relief connected to pursuing a collective action under the FLSA. (*See* Not. of Mot.). In contrast, Plaintiff's argument for a six-year period does not rely on the FLSA; rather, Plaintiff maintains because "the New York State and Federal causes of action are intertwined, claimants should be made aware of the possible New York State claims" governed by the longer statute of limitations. (Reply Br. at 9). Plaintiff insists also that the six-year period would best serve "the interest of judicial economy." (*Id*.). The Court rejects both points.

First, "[a]s the motion before the Court is only for collective certification of an FLSA opt-in collective and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL, the Court is of the view that" the six-year period is inappropriate. *Pequero v. Montafon, LLC*, No. 18-CV-12187, 2020 WL 4016756, at *12 (S.D.N.Y. July 15, 2020). "After all, the NYLL does not provide for a collective action as distinct from a class action, which is a different procedure with different requirements." *Islam v. LX Ave. Bagels, Inc.*, No. 18-CV-4895, 2019 WL 5198667, at *8 (S.D.N.Y. Sept. 30, 2019). Second, even if this Court were inclined to entertain the six-year period on the basis of judicial economy as others have done, Plaintiff offers no basis to believe it *would* serve judicial economy. The practical impact of Plaintiff's approach would permit a lookback period twice as long as that permitted by the FLSA and force the Court to untangle the viability of individuals' right to pursue the Collective Claims on the other end. In this case, the Court believes "it would be confusing to employees who are ineligible for the FLSA opt-in class to receive the

opt-in notice, which does not relate to any state law claims." *Aguilo*, 2020 WL 3545558, at *3 (internal quotation marks omitted). Consequently, the lookback period is three years.

As for the date from which the three-year lookback period shall begin, "[n]otice would normally be provided to those employed within three years of the date of the <u>notice</u>." *Kicho Corp.*, 2020 WL 1900582, at *12 (internal quotation marks omitted); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *5 n.4 (S.D.N.Y. Oct. 27, 2010) (explaining that a lookback period calculated from date of notice "conform[s] as closely to 29 U.S.C. § 256 as possible"). While some courts deviate from this standard "because equitable tolling issues often arise for prospective plaintiffs," *Kicho Corp.*, 2020 WL 1900582, at *12 (internal quotation marks omitted), Plaintiff makes no such argument here. In fact, Plaintiff's argument for a six-year (or in the alternative three-year) lookback period from the date he filed the Complaint does not explain why the Court should deviate from the standard date of notice. As such, the lookback period shall be based on the date of notice.

C. <u>Equitable Tolling</u>

Plaintiff insists that the Court should toll the "FLSA statute of limitations . . . until such time that [Plaintiff is] able to send notice" because of the time required to rule on this motion could "prejudice . . . actual or potential opt-in plaintiffs . . . ." (Pl. Br. at 18-19; Reply Br. at 9-10). Defendants oppose, arguing that Plaintiff has not presented facts sufficient to permit the Court to "exercise its discretion to order this equitable relief here." (Def. Opp'n. at 15). Upon review of the facts, statutory text, and governing precedent, the Court concludes that equitable tolling is not appropriate in this particular case.

"To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented [him] from filing [his] claim on time and that []he acted with reasonable

diligence throughout the period []he seeks to toll." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (internal quotation marks omitted); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). While the parties appear to assume that Plaintiff was diligent and dispute only whether Plaintiff has presented "extraordinary circumstances" sufficient to warrant tolling (*see* Pl. Br. at 18-19; Def. Opp'n. at 15-16; Reply Br. at 9-10), the Court does not reach the issue of extraordinary circumstances because the parties misapply the standard.

There is presently one plaintiff in this action, and "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (internal citations omitted). Unlike class certification under Rule 23, authorizing "conditional certification does not produce a class with an independent legal status, or join additional parties to the action." *Id.* As the Second Circuit noted recently in discussing the different roles of 29 U.S.C. § 216(b) and Rule 23, the former is "a nonrepresentative action." *Scott*, 954 F.3d at 519. Here, Plaintiff's application is not connected to his rights but, rather, seeks to prevent "prejudice" to individuals who are not—and may never be—parties to this action. This request for wholesale equitable tolling is denied. Should the potential opt-in plaintiffs file consent forms and appear as parties in this action, the Court will consider any arguments that those individuals have in support of equitably tolling their claims in due course.

D. Production of Contact Information

With respect to contacting the collective, Plaintiff seeks production of "names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers,

dates of employment, and . . . social security numbers." (Pl. Br. at 15). Defendants object only to producing compensation rates, social security numbers, and telephone numbers. (Def. Opp'n at 20-22). Notably, Plaintiff limited his reply argument to social security and telephone numbers. (Reply Br. at 10-11). The Court finds that Defendants shall produce telephone numbers, but shall not be compelled to produce compensation rates or social security numbers.

"Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification." *Tate v. WJL Equities Corp.*, No. 13-CV-8616, 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) (collecting cases); *see also Kicho Corp.*, 2020 WL 1900582, at *9 (same); *Shi*, 2020 WL 4586359, at *5 (same). Precedent bears out that "courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with conditional certification of a FLSA collective action." *Aguilo*, 2020 WL 3545558, at *10 (internal quotation marks and emphasis omitted).

In contrast to the list of conventional contact information permitted, "[c]ourts are reluctant . . . to authorize disclosure of private information, such as . . . social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 75 (E.D.N.Y. 2016) (collecting cases). Plaintiff has made no such showing here. Instead, Plaintiff's position stems from speculation that since "a large percentage of consent forms are *typically* returned as undeliverable, *the only way* to locate these employees" will be by performing "skip traces" on their social security numbers. (Pl. Br. at 14 (emphasis added)). The Court is not persuaded that this information is required for contacting potential opt-in plaintiffs and "agrees with [D]efendants that disclosure of social security numbers raises unnecessary privacy concerns." *In re Penthouse Exec. Club Comp.*

*Litig.*, 2010 WL 4340255, at *5. Accordingly, Plaintiff's request for production of social security numbers is denied.

The Court reaches a similar result with respect to Plaintiff's request for production of compensation rates. Plaintiff cites a single case, *Alvarez v. Schnipper Rests. LLC*, No. 16-CV-5779, 2017 WL 6375793, *6 (S.D.N.Y. Dec. 11, 2017), in which the court granted production of compensation rates (Reply Br. at 11). The court in that matter did not explain why compensation rates were relevant to contacting potential opt-in plaintiffs. *Alvarez*, 2017 WL 6375793, at *6. Rather, "while disclosure of compensation rates is relevant and appropriate as to plaintiffs who have joined the suit, requiring disclosure . . . for all putative collective members . . . serves little purpose" for providing notice. *Lora v. To-Rise, LLC*, No. 16-CV-3604, 2017 U.S. Dist. LEXIS 112644, at *57 (E.D.N.Y. July 18, 2017), *adopted* 2017 U.S. Dist. LEXIS 151164 (E.D.N.Y. Sept. 15, 2017). Since the Court concludes that compensation rates are not necessary for contacting potential opt-in plaintiffs, and Plaintiff offers no argument to the contrary, the Court shall not direct production of this information.

E.   Manner of Notice

Defendants do not appear to oppose Plaintiff's requests for: (1) an opt-in period of sixty days; (2) notice via U.S. mail and e-mail; (3) a reminder notice halfway through the opt-in period; or (4) posting notice at Defendants' business locations. (*See generally* Def. Opp'n.). The Court concludes, with one exception, that these requests are proper and align with precedent in this

Circuit.[3] The lone exception concerns posting notice at Defendants' locations—while posting notice is permissible, the Court will not permit Plaintiff's counsel "to do unannounced spot checks on each of the locations at any point throughout the of the opt-in period." (Pl. Br. at 17-18). A Declaration filed by Defendants stating that the notice has been posted at all times in an area common to all employees throughout the entire period will suffice. *See Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972, 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018) (directing defendants to file an "affidavit of compliance with the posting requirement").

The parties do, however, disagree with respect to whether notice may be sent via text message. Courts allow notice by text "where the nature of the employer's business facilitated a high turnover rate among employees." *Park*, 2019 WL 2205715, at *7 (internal quotation marks omitted). Defendants argue that Plaintiff failed not only to show "high employee turnover," but that he failed to even argue the point. (Def. Opp'n. at 21-22). Plaintiff concedes the standard in reply, but argues that text message notice is proper because tow-truck driving "is a dangerous job, and one in which high turnover rates are the norm." (Reply Br. at 10-11). Plaintiff submits news articles discussing injury rates, insurers' aversion to writing coverage for that industry, and—as of 2017—how an economist commented that market trends suggested "a significant tightening of the driver market and acceleration of the driver shortage." (Doc. 37-2, Reply Decl., Ex. L). Even if the Court considers this hearsay evidence submitted for the first time on reply, nothing therein supports

---

[3] A sixty-day opt-in period is "consistent with FLSA practice." *Shi*, 2020 WL 4586359, at *6 (internal quotation marks omitted). Moreover, "given the reality of communications today, email notification is more effective at notifying potential opt-in plaintiffs than mailed notice alone. For this reason, courts in this District routinely allow notice and consent forms to be distributed by email." *Park v. FDM Grp. Inc.*, No. 16-CV-01520, 2019 WL 2205715, at *6 (S.D.N.Y. May 22, 2019) (internal quotation marks and citations omitted). Courts likewise commonly permit plaintiffs to send a reminder notice before the opt-in period ends, *Chui*, 2020 WL 3618892, at *12 (collecting cases), and despite a split among courts, *see Park*, 2019 WL 2205715, at *7, courts "routinely approve requests to post notice on employee bulletin boards and in other common areas," *Pequero*, 2020 WL 4016756, at *13 (internal quotation marks omitted).

Plaintiff's claim that Defendants, or tow-truck driving in general, experience a high turnover rate among employees. Notice via text will not be permitted.

F. <u>Content of Notice</u>

Finally, the parties disagree on the proper content of the notices and consent form. (*Compare* Def. Opp'n. at 22-25, *with* Reply Br. at 8-9). The parties are directed, in light of the rulings contained herein, to meet and confer regarding the content for the notices and consent form. The parties shall, within 21 days of the date of this Memorandum Opinion and Order, file a joint letter with the Court presenting the agreed upon notices and consent form or advising that the parties were unable to reach an agreement. *See In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *5. In the event that the parties are unable to agree, the joint letter shall be no more than three pages double-spaced explaining briefly the point(s) of disagreement. The Court will then determine the content of the notices and consent form.

<u>**CONCLUSION**</u>

Based upon the foregoing, Plaintiff's motion to conditionally certify a collective action under 29 U.S.C. § 216(b) is GRANTED. The conditionally certified collective is defined as individuals who worked as tow-truck drivers for R.J.T. Motorist Service, Inc.'s automotive servicing, auto body repairs, and/or towing and road services within three years of the date notice is transmitted. Plaintiff's request for equitable tolling is denied. Defendants shall provide Plaintiff with a computer-readable file containing the names, titles, last known mailing addresses, email addresses, all known telephone numbers, and dates of employment of all potential opt-in plaintiffs within fourteen (14) days of this Memorandum Opinion and Order. Notice shall be posted by Defendants in an area common to all employees and shall be sent via first class mail and email, with a reminder notice sent halfway through the sixty (60) day opt-in period. Defendants shall file

a Declaration stating that the notice has been posted at all times in an area common to all employees throughout the entire sixty (60) day opt-in period.

    The parties are directed to confer regarding the content of the notices and consent form in accordance with the directive above.

    The Clerk of the Court is respectfully directed to terminate the pending motion sequence. (Doc. 27).

**SO ORDERED:**

Dated:   New York, New York
         August 24, 2020

_____
PHILIP M. HALPERN
United States District Judge